IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PATRICIA L. LIVERSAGE, | * | |
| *Plaintiff*, | * | |
| vs. | * | Civ. Action No. 1:13-cv-3166 |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | * | |
| 1013 Centre Road Wilmington, DE 19805 | * | |
| | * | |
| Serve on: | * | |
| National Registered Agents Inc. of Maryland 351 W. Camden St. Baltimore, MD 21201, | * * | |
| and | * | |
| CITIBANK, N.A. 399 Park Avenue New York, NY 10043 | * * | |
| Serve on: | * | |
| The Corporation Trust Incorporated 351 West Camden Street Baltimore, MD 21201 | * * | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Now comes Patricia L. Liversage ("Plaintiff"), by and through her attorneys, E. David Hoskins, Max F. Brauer and The Law Offices of E. David Hoskins, LLC, and for her Complaint against Portfolio Recovery Associates, LLC and Citibank, N.A. ("Defendant") alleges and states as follows:

1

**PRELIMINARY STATEMENT**

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"); the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201, *et seq.* (hereinafter "MCDCA"); and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101, *et seq.* (hereinafter "MCPA").

2. Plaintiff Patricia L. Liversage alleges that the collection practices of Defendant Portfolio Recovery Associates, LLC violate the FDCPA, MCDCA and MCPA. Plaintiff Patricia L. Liversage further asserts claims against Defendant Citibank, N.A. for violations of the MCDCA and MCPA.

3. The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b).

4. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

5. The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

6. The FDCPA is a strict liability statute that provides for actual or statutory damages upon the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The purpose of the least-sophisticated consumer standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

7. The FDCPA is a remedial statute that is construed liberally in favor of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp.2d 808 (M.D.N.C. 2011); *Sprinke v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006);

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

8. To prohibit abuses by debt collectors, the FDCPA, at 15 U.S.C. § 1692e, provides that a debt collector may not use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." In addition, the FDCPA at 15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

9. The MCDCA prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt. Md. Code Ann., Com. Law §§ 14–201 to 14–204. Specifically, the MCDCA states that a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction," *id.* § 14–201(b), may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id.* § 14–202(8).

10. The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," Md. Code Ann., Com. Law § 13–301, and expressly designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA. *Id.* § 13–301(14)(iii).

## JURISDICTION AND VENUE

11. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d) and 28 U.S.C. § 1331.

12. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

13. Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b), in that the Defendant transacts business in this District and a substantial portion of the acts

that give rise to the claim occurred within this District.

## PARTIES

14.     Plaintiff, Patricia L. Liversage, is an individual who was at all relevant times residing in Frederick County, Maryland.

15.     Patricia L. Liversage is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA, as she is a natural person improperly sued in the attempt to collect a consumer debt allegedly owed on a Citibank, N.A./Sears credit card used for personal, family, or household purposes. Patricia L. Liversage is a "person" as that term is defined by the MCDCA and the MCPA.

16.     Defendant Portfolio Recovery Associates, LLC, is organized under Delaware law. Portfolio Recovery Associates, LLC is registered to do business in Maryland and is licensed as a debt collector in Maryland. Portfolio Recovery Associates, LLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers, which it purchases after these debts have gone into default. Portfolio Recovery Associates, LLC uses the United States Mail in furtherance of its collection of debts alleged to be due another. In 2012, Portfolio Recovery Associates, LLC retained counsel to file approximately 6,328 debt collection lawsuits in the State of Maryland.

17.     At all relevant times Portfolio Recovery Associates, LLC acted as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) of the FDCPA. Portfolio Recovery Associates, LLC is not a creditor of the Plaintiff, but rather is a debt buyer attempting to collect a consumer debt in default that it alleges is owed by Patricia L. Liversage.

18. At all relevant times Portfolio Recovery Associates, LLC acted as a "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of the MCDCA.

19. At all relevant times Citibank, N.A. acted as a "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of the MCDCA.

20. The acts of Defendants alleged herein were performed by their respective employees acting within the scope of their actual or apparent authority.

**FACTUAL ALLEGATIONS**

21. Banks have existed for centuries without the aid of debt buyers. The selling of charged off portfolios of debt is a recent phenomenon that is not necessary for the day-to-day operation of a bank. The debts are not sold near face value, but for pennies on the dollar. As the August 8, 2012, issue of Justice Matters notes:

> A new industry -- "debt buying," -- has clogged the dockets of small claims courts in Maryland and throughout the country, particularly during the current recession. Debt buyers specialize in buying debts owed to creditors, usually credit card companies, for a tiny fraction of the amount owed. Debts may be sold to other debt buyers several times, and the documentation -- the proof -- that the debt is owed sometimes is little more than the person's name, last known address and Social Security number.

Justice Matters, Spring-Summer 2012 (available at http://www.courts.state.md.us/publications/jmonline/2012spring/index.html). Debt purchasers then attempt to collect on the full balance.

22. Debt purchasing is not an "ordinary" business, but rather the purchasing of a right to collect a defaulted debt -- i.e. the purchase of a cause of action.

23. Because a debt-buyer has no ongoing relationship with the consumer and

no incentive to create goodwill, a case involving a debt buyer raises special concerns about the reliability and trustworthiness of records relied upon by the debt buyers to establish their claims. *See* Federal Trade Commission, Collecting Consumer Debts: The Challenges of Change, A Workshop Report (2009) at 5, available at http:www.ftc.gov/bop/workshops/debt_collection/dcwr.pdf. As Consumer Financial Protection Bureau (CFPB) Deputy Director Steve Antonakes recently noted, "This is a market where consumers can't vote with their feet." Life of a Debt: Data Integrity in Debt Collection, Federal Trade Commission (June 6, 2013), available at http://www.ftc.gov/video-library/index.php/ftc-events/life-of-a-debt:-data-integrity-in-debt-collection-part-1/2437600457001 (video link) and http://www.ftc.gov/video-library/transcripts/130606debtcollection1.pdf (transcript).

24. The lack of reliable proof has resulted in debt buyer cases (1) filed against a person who is not the debtor, (2) filed outside the applicable statute of limitations, (3) filed in an improper venue, and (4) filed on a debt that has been previously extinguished through payment or otherwise. *See, e.g., Evans v. Midland Funding, LLC*, 574 F.Supp. 2d 808, 810 (S.D. Ohio 2009) (non-existent debt); *Herkert v. MRC Receivables Corp., et al.*, 655 F.Supp.2d 870 (N.D. Ill 2009) (policy and practice of filing or causing filing of time-barred suits); *Grimsley v. Messerli & Kramer, P.A. and Midland Funding, LLC*, No. 08-548 (JRT/RLE), 2009 WL 928319 (D. Minn. March 31, 2009). One state court judge has even noted that:

> on a regular basis this court encounters defendants being sued on the same debt by more than one creditor alleging they are the assignee of the original credit card obligation. Often these consumers have already entered into stipulations to pay off the outstanding balance due the credit card issuer and find themselves filing an order to show cause to vacate a default judgment from an

unknown debt purchaser for the same obligation.

*Chase Bank USA, N.A. v. Cardello*, 896 N.Y.S.2d 856, 857 (Richmond Co. Civ. Ct. March 4, 2010). *See also* Peter A. Holland, The One Hundred Billion Dollar Problem in Small Claims Court: Robo-Signing and Lack of Proof in Debt Buyer Cases, 6 J. Bus. & Tech. 259, 270-72 (2011) (collecting instances of consumers sued twice on the same debt).

24. The FTC recently analyzed debt purchases from nine debt buyers including Defendant Portfolio Recovery Associates, LLC and noted that "[i]n many purchase and sale agreements, sellers disclaimed all warranties and representations regarding the accuracy of the information they provided at the time of the sale about individual debts." Federal Trade Commission, The Structure and Practices of the Debt Buying Industry (2009) at 25, available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf.

25. Notwithstanding the inherently unreliable data transferred as part of the debt purchase transaction, debt purchasers like Defendant Portfolio Recovery Associates, LLC immediately begin collection activity without taking any reasonable steps to determine whether the purchased debt has been extinguished by the original creditor.

26. This case is the latest in a long line of cases where Defendant Portfolio Recovery Associates, LLC attempted to collect on a debt that had previously been extinguished by the original creditor.

27. Plaintiff incurred and allegedly defaulted on a consumer debt owed to Citibank, N.A. on a Sears credit card issued by Citibank, N.A.

28. On or about April 1, 2013, Citibank, N.A. filed a complaint in the District

Court of Maryland for Frederick County seeking a judgment in the amount of $2,631.73 from the Plaintiff for allegedly failing to repay amounts owed on the Sears credit card account.

29. Plaintiff retained undersigned counsel and a notice of intention to defend was filed on April 12, 2013.

30. At Citibank, N.A.'s request the complaint was dismissed with prejudice on May 30, 2013, thereby extinguishing any obligation to pay the alleged debt relating to the Sears credit card account.

31. Citibank, N.A. subsequently sold the Plaintiff's account to Defendant Portfolio Recovery Associates, LLC on June 27, 2013, notwithstanding the fact that the alleged debt had previously been extinguished on May 30, 2013.

32. On July 11, 2013, Defendant Portfolio Recovery Associates, LLC sent a letter to Plaintiff alleging that it had purchased the Plaintiff's account on June 27, 2013 and falsely claiming that the current balance due on the account was $2,631.73.

33. Defendant Portfolio Recovery Associates, LLC failed to conduct any investigation into whether the alleged debt relating to the Plaintiff's account had already been extinguished.

34. Defendant Portfolio Recovery Associates, LLC began actively attempting to collect the alleged debt by repeatedly telephoning the Plaintiff on the following dates and times:

| | |
|---|---|
| August 1, 2013 | 11:02 AM; 11:36 AM; 11:53 AM; 8:10 PM |
| August 2, 2013 | 11:47 AM; 12:08 PM; 1:42 PM; 2:49 PM |
| August 3, 2013 | 11:03 AM; 1:21 PM; 4:32 PM |

| | |
|---|---|
| August 4, 2013 | 11:48 AM; 2:49 PM |
| August 5, 2013 | 11:13 AM; 2:13 PM; 4:48 PM |
| August 6, 2013 | 11:06 AM; 12:06 PM; 1:52 PM |
| August 7, 2013 | 11:36 AM; 1:36 PM; 6:38 PM |

35. Plaintiff filed a timely dispute and request for validation on or about August 7, 2013, advising Defendant Portfolio Recovery Associates, LLC that the alleged debt was subject to a final adjudication in favor of Ms. Liversage in the District Court for Frederick County.

36. On or about August 9, 2013, Defendant Portfolio Recovery Associates, LLC wrote to undersigned counsel stating that it had closed the account and would no longer collect the balance allegedly owed by the Plaintiff, thus admitting that it had no good faith basis to attempt to collect the alleged debt in the first place.

## **DEFENDANTS' POLICIES AND PRACTICES**

37. Defendant Portfolio Recovery Associates, LLC regularly purchases accounts from Defendant Citibank, N.A. and other original creditors for which the debts have already been extinguished or are no longer collectible.

38. It is the standard policy and practice of Defendant Portfolio Recovery Associates, LLC to actively attempt to collect on accounts purchased from original creditors for which the debts had already been extinguished or were no longer collectible. These collection activities include telephone calls seeking payment on debts that were previously extinguished by the original creditor.

39. This standard policy violates §§ 1692e, 1692e(2)(A), 1692e(10), 1692f and 1692f(1) of the FDCPA, which prohibit,

> *§ 1692e. False or misleading representations*
>
> *A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .*
>
>> *(2) The false representation of--*
>>
>> *(A) the character, amount, or legal status of any debt; or*
>>
>> *   *   **
>>
>> *(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.*
>
> *§ 1692f. Unfair Practices*
>
> *A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:*
>
>> *(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.*

40. This standard practice also violates § 14-202(8) of the MCDCA and §§ 13-301(1) and (14) of the MCPA.

41. Violations of the MCDCA are violations of the MCPA pursuant to § 13-301(14)(iii) of the MCPA.

42. It is the standard policy and practice of Defendant Citibank, N.A. to sell

accounts to Defendant Portfolio Recovery Associates, LLC for which the debts had already been extinguished or were no longer collectible because, among other reasons, there existed a prior final adjudication that Citibank, N.A. was owed nothing on the account.

42. This standard practice violates § 13-301(1) of the MCPA because the false or misleading statements and representations made by Defendant Citibank, N.A. to Defendant Portfolio Recovery Associates, LLC had the capacity, tendency, or effect if deceiving or misleading consumers into believing that they owed money to a debt buyer even though the debt had previously been extinguished.

### FIRST CAUSE OF ACTION
### (The Fair Debt Collection Practices Act)

43. Plaintiff incorporate the foregoing paragraphs.

50. Defendant Portfolio Recovery Associates, LLC materially violated §§ 1692e, 1692e(2)(A), 1692e(10), 1692f and 1692f(1) by actively attempting to collect on Plaintiff's Sears credit card account after the debt had already been extinguished by the original creditor and was no longer collectible.

51. As a direct consequence of Defendant Portfolio Recovery Associates, LLC's acts, practices and conduct, Plaintiff suffered actual damages, including having to retain an attorney to dispute the debt collection activities and suffering embarrassment, emotional distress, anger and frustration causing actual injury or loss.

WHEREFORE, Plaintiff requests the following relief from Defendants:

   a. The Court enter judgment in favor of the Plaintiff in the maximum amount of statutory damages provided under 15 U.S.C. § 1692k;

   b. The Court enter judgment for actual damages in favor of the

Plaintiff, presently estimated to be in excess of $30,000.00;

  c. The Court enter an award of pre-judgment and post-judgment interest on all sums awarded to the Plaintiff;

  d. The Court award to the Plaintiff reasonable counsel fees and the costs of these proceedings;

  e. The Court order such other and further relief as the nature of this case may require.

## SECOND CAUSE OF ACTION
### (The Maryland Consumer Debt Collection Act)

52. Plaintiff incorporates the foregoing paragraphs.

53. Plaintiff incurred a Sears credit card debt that was primarily for personal, family, or household purposes and is therefore a "consumer transaction" as that term is defined by the Maryland Consumer Debt Collection Act.

54. Defendant Portfolio Recovery Associates, LLC materially violated § 14-202(8) of the MCDCA by actively attempting to collect on Plaintiff's Sears credit card account after the debt had already been extinguished by the original creditor and was no longer collectible.

55. As a direct consequence of Defendant Portfolio Recovery Associates, LLC's acts, practices and conduct, Plaintiff suffered actual damages, including having to retain an attorney to dispute the debt collection activities and suffering embarrassment, emotional distress, anger and frustration causing actual injury or loss.

WHEREFORE, Plaintiffs request the following relief from Defendants:

  a. The Court enter judgment for actual damages in favor of the Plaintiff, presently estimated to be in excess of $30,000.00;

      b.      The Court enter an award of pre-judgment and post-judgment interest on all sums awarded to the Plaintiff;

      c.      The Court award to the Plaintiff reasonable counsel fees and the costs of these proceedings;

      d.      The Court order such other and further relief as the nature of this case may require.

### THIRD CAUSE OF ACTION
### (The Maryland Consumer Protection Act)

56. Plaintiff incorporates the foregoing paragraphs.

57. Plaintiff is a consumer as defined by the MCPA, Maryland Code Annotated, Commercial Law § 13-101(c).

58. Under § 13-301(14)(iii) of the MCPA, unfair or deceptive trade practices also include any violation of the MCDCA.

59. Defendant Portfolio Recovery Associates, LLC materially violated §§ 13-301(14)(iii) and 13-303 of the MCPA by actively attempting to collect on Plaintiff's Sears credit card account after the debt had already been extinguished by the original creditor and was no longer collectible.

60. Defendant Citibank, N.A. materially violated § 13-303 of the MCPA by selling the Plaintiff's account to Defendant Portfolio Recovery Associates, LLC after the debt had been extinguished and was no longer collectible because there existed a prior final adjudication that Citibank, N.A. was owed nothing on the account.

61. Defendant Citibank, N.A. materially violated § 13-303 of the MCPA by making false or misleading statements and representations to Defendant Portfolio Recovery Associates, LLC that had the capacity, tendency, or effect if deceiving or

misleading Plaintiff into believing that she owed money to Defendant Portfolio Recovery Associates, LLC even though the debt had previously been extinguished.

WHEREFORE, Plaintiffs request the following relief from Defendants:

    a.    The Court enter judgment for actual damages in favor of the Plaintiff, presently estimated to be in excess of $30,000.00;

    b.    The Court enter an award of pre-judgment and post-judgment interest on all sums awarded to the Plaintiff;

    c.    The Court award to the Plaintiff reasonable counsel fees and the costs of these proceedings;

    d.    The Court order such other and further relief as the nature of this case may require.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorney's fees and litigation costs to be awarded should Plaintiff prevail on any of her claims in this action.

Dated: October 24, 2013                      Respectfully Submitted,

                                              */s/ E. David Hoskins*_____
                                              E. David Hoskins, Esq. , No. 06705
                                              The Law Offices of E. David Hoskins, LLC
                                              Quadrangle Building at Cross Keys
                                              2 Hamill Road, Ste. 362
                                              Baltimore, Maryland 21210
                                              (410) 662-6500 (Tel.)
                                              *dhoskins@hoskinslaw.com*

/s/ *Max F. Brauer*
Max F. Brauer, Esq., No. 11306
The Law Offices of E. David Hoskins, LLC
Quadrangle Building at Cross Keys
2 Hamill Road, Ste. 362
Baltimore, Maryland 21210
(410) 662-6500 (Tel.)
(410) 662-7800 (Fax)
[maxbrauer@hoskinslaw.com](mailto:maxbrauer@hoskinslaw.com)